## 144　　　　　HAMPTON v. HAMSHER.

ISAAC 'HAMPTON, Respondent, v. MARTIN S. HAMSHER,
Appellant.

*Assessment of lands lying in two adjoining towns and assessed in one of them — apportionment and assessment of highway taxes — 1 R. S., chap. 16, art. 2, tit. 1, secs. 19, 24.*

The plaintiff was a resident of the town of Ossian, living upon a farm partly in that town and partly in the town of Nunda, the whole of the farm being assessed for town, county and State purposes in the town of Ossian. In the year 1885 the defendant, as commissioner of highways, in apportioning the amount of highway work chargeable against the plaintiff in the road district in which he lived in the town of Ossian, included, for the purpose of such apportionment and assessment for highway labor, that portion of his farm lying in the town of Nunda, following the last assessment-roll of the town of Ossian. The plaintiff, claiming that the defendant had no jurisdiction to do this, brought this action to recover the damages suffered by reason of this assessment.

*Held*, that, under the 'provision of section 24 of 'title 1, article 2, chapter 16 of the Revised Statutes, the commissioner was bound, in making the apportionment, to follow the last assessment-roll and that having done so this action could not be maintained.

The several statutes relating to this matter considered, and the conclusion reached that the system of taxation was intended to be harmonious and did not contemplate that farms, intersected by town lines, were to be assessed in one town for one purpose and in another town for another.

APPEAL from a judgment of the County Court of Livingston county, reversing a judgment rendered by a justice of the peace of that county in favor of the plaintiff.

*Charles J. Bissell*, for the appellant.

*John M. McNair* and *Ralph T. Wood*, for the respondent.

HAIGHT, J. :

This action was brought to recover pay for three and one-half days' services performed upon the highway. The plaintiff was a resident of the town of Ossian, living upon a farm partly in that town and partly in the town of Nunda. The whole of the farm was assessed for town, county and State purposes in the town of Ossian. In the year 1885 the defendant, as commissioner of highways, in apportioning the amount of highway work chargeable against the plaintiff in the road district in which he lived in the

town of Ossian, included, for the purposes of such apportionment and assessment for highway labor. that portion of his farm lying in the town of Nunda, following the last assessment-roll of the town of Ossian.

It is contended that he had no jurisdiction to do this and that he consequently became liable to the plaintiff for the damages suffered by reason of this assessment. The respondent, in his brief, concedes that the whole farm was properly borne upon the assessment-roll of the town of Ossian for the purposes of town, county and State taxes. If we could follow this concession we should have but little trouble with the case.

Section 4, title 2, article 1, chapter 13, 1 Revised Statutes, page 389, provided that " When the line between two towns, or wards, divides a farm or lot the same shall be taxed, if occupied, in the town or ward where the occupant resides. If unoccupied, each part shall be assessed in the town in which the same shall lie, and this whether such division line be a town line only or be also a county line." This provision was general and not necessarily limited to town, county or State taxes, but covered highway taxes as well. But the difficulty is that this section was amended by chapter 287 of the Laws of 1871, and that chapter was repealed by chapter 355 of the Laws of 1872, the effect of which was to repeal the entire provision. (*Harris* v. *Board of Supervisors of Niagara County*, 33 Hun, 279–282; *McMillan* v. *Bellows,* 37 id., 214; *The People, ex rel. Canajoharie Nat. B'k* v. *Board of Supervisors of Montgomery County*, 67 N. Y., 109.)

The legislature, however, doubtless did not intend this result and has hastened to re-enact section 4 of the Revised Statutes so repealed, which was done by chapter 315 of the Laws of 1886. The plaintiff, however, took no proceedings for the correction of the assessment-roll of the town of Ossian, but appears to have acquiesced in the assessment of the whole of his farm in that town. We, therefore, pass to consider the duties of highway commissioners in reference to assessing highway labor in their respective towns. Section 19 of title 1, article 2, chapter 16 of the Revised Statutes (1 R. S., 505, 506), provides: " Every person owning or occupying land in the town in which he or she resides, and every male inhabitant, above the age of twenty-

one years, residing in the town when the assessment is made, shall be assessed to work on the public highways in such town; and the lands of non-residents situated in such town shall be assessed for highway labor as hereinafter directed." Section 24 provides that "in making such estimate and assessment the commissioner shall proceed as follows: 1. The whole number of days' work to be assessed in each year shall be ascertained, and shall be at least three times the number of taxable inhabitants in such town. 2. Every male inhabitant above the age of twenty-one years (excepting ministers of the gospel and priests of every denomination, paupers, idiots and lunatics) shall be assessed at least one day. 3. The residue of such day's work shall be apportioned upon the estate, real and personal, of every inhabitant of such town as the same shall appear by the last assessment-roll of the town, and upon each tract or parcel of land, of which the owners are non-residents, contained in the list made as aforesaid."

It will be observed that under this subdivision of the section the residue of the work, after assessing one day to every male inhabitant over twenty-one years of age, etc., is to be apportioned upon the *estate*, real and personal, of every *inhabitant* of the town as the same shall appear by the *last assessment-roll* of the town. Here is a positive statutory requirement for the commissioner to apportion the work, and in doing so to follow the last assessment-roll. He is given no discretion in the matter. In the case under consideration the defendant did follow the last assessment-roll in apportioning the plaintiff's highway labor; and as that part of the plaintiff's farm lying in Nunda was borne upon the assessment-roll of Ossian, it follows that he was properly assessed for that land in the town of Ossian for highway purposes.

The learned county judge, in commenting upon the provisions of section 19, has transposed the same, and then draws the conclusion that its provisions are limited to lands lying within the town. He reads it as follows: "Every person owning or occupying land in the town in which he or she resides, and the lands of non-residents situated in such town are the lands upon which the apportionment is to be made." We do not so read it. It is, every *person* owning or occupying land in the town that is to be assessed for work on the public highways, and then follow provisions in reference to non-resident lands which are also to be assessed. The first subdivision

of the section does not in terms limit the assessment to lands in the town, but limits it to the *persons* owning land in the town.

It is also contended that that portion of the plaintiff's farm lying in Nunda could properly be assessed in that town under section 22, which provides that the commissioner of highways in each town, at their first or subsequent meeting shall make out a list and statement of the contents of all lots, pieces or parcels of land within such town owned by non-residents therein. Every lot so designated shall be described in the same manner as is required for assessors, and its value shall be set down opposite to such description. Such value shall be the same as was affixed to such lot in the last assessment-roll of the town, and if such lot was not separately valued in such roll then in proportion to the valuation which shall have been affixed to the whole tract of which such lot shall be a part." But this section has reference to non-resident lands. Non-resident lands are defined to be unoccupied lands not owned by a person residing in the town or ward in which the same are situated. (1 R. S., 389, § 3, art. 1, tit. 2, chap. 13.) The plaintiff's farm in Nunda was not non-resident land but were lands upon which he lived, being a portion of the farm tilled and cultivated by him. But this section gives no power to the commissioner of highways to assess the value of the lot. For the value is the same as was affixed to the last assessment-roll of the town. The commissioner of highways in Nunda could not value the lot, neither could he get its value from the last assessment-roll of that town, for it was not borne upon the assessment-roll of that town.

We are, consequently, of the opinion that this section has no application to the lands in question. Again, section 1, chapter 107 of the Laws of 1832, provides that : " Lands of non-residents within any town, occupied and improved by the owner or owners, or his or their servants or agents, shall be liable to the same assessments for highways as if the owner or owners were residents." And, again, by section 1, chapter 154 of the Laws of 1835: " The real property of non-resident owners improved or occupied by a servant or agent, shall be subject to assessment of highway labor, and at the same rate as the real property of resident owners." It must be remembered that these provisions were enacted when section 4 of the Revised Statutes, to which we have already referred, was in force, and must be considered in connection with it; and, when so con-

sidered, it is apparent that there is no conflict, and that the lands mentioned in these sections mean other lands in the town owned by an individual, which he occupies for the purpose of cultivation or improvement, either in person or by his servant or agent, but upon which he does not live. The provisions of chapter 770 of the Laws of 1866, to the effect that highway tax upon land or property shall be worked out in the district in which the land is situated, should also be read in connection with section 4. We do not think that this chapter repeals that section. The plaintiff's lands in Nunda were not omitted lands within the provisions of section 6 of chapter 431 of the Laws of 1837, for they were, in fact, borne upon the assessment-roll. All of these provisions were enacted whilst section 4 was in force, and before its repeal. We have alluded to it for the purpose of determining the proper construction intended for these provisions. These various enactments are a part of the system which the legislature has, from time to time, devised for the purpose of assessing property and maintaining the expenses of the State, county and local government of which the management of the highways forms a part. The system was intended to be har monious and uniform; and we cannot believe that it was intended that farms intersected by town lines were to be assessed in one town for one purpose and in another town for another.

The *Trustees of The Village of Angelica* v. *Morse* (56 Barb., 380), and *The People ex rel. The Hudson River Railroad Com- pany* v. *Pierce* (31 id., 138), are distinguishable from the case under consideration, but both of these cases are authority for holding that the commissioners of highways, in apportioning the highway labor, must follow the last assessment-roll in determining the amount of labor to be assessed to each resident of their town.

We are, consequently, of the opinion that the judgment of the County Court should be reversed and that of the justice affirmed.

CORLETT, J., concurred; BRADLEY, J., not voting.

Judgment of the County Court reversed and that of the justice affirmed.